UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AUSCO PRODUCTS, INC.,

               Plaintiff,

v.

AXLE, INC., IMAGINATIVE MFG.,
INC., and SCOTT AUSTIN,

               Defendants.

Case No: 6:19-cv-06798

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

**PEPPER HAMILTON LLP**

Andrew P. Zappia, Esq.
Christina L. Shifton, Esq.
70 Linden Oaks, Suite 210
Rochester, NY  14625
Tel.:  (585) 271-2102
Fax:  (585) 270-2179
Email:  Zappiaa@pepperlaw.com
       Shiftonc@pepperlaw.com
*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

Page(s)

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................. 1

ALLEGATIONS IN THE COMPLAINT ............................................................. 2

    A.    Allegations Regarding Each Defendant ................................................. 2

    B.    The Patents-In-Suit and Infringement Allegations ................................ 3

ARGUMENT ........................................................................................................ 7

I.     STANDARD OF REVIEW .......................................................................... 7

II.    THE COMPLAINT IS BASED ON IMPERMISSBALE GROUP PLEADING .............. 8

III.   THE COMPLAINT FAILS TO PLEAD FACTS TO STATE A CLAIM AGAINST AUSTIN AND AXLE .............................................................................. 9

    A.    Standard for Individual Liability ........................................................ 9

    B.    The Complaint Fails to Plead Any Facts to Support Individual Liability of Austin .......................................................................................... 10

    C.    The Complaint Fails to State a Claim Against Axle .............................. 11

IV.   THE COMPLAINT FAILS TO PLEAD FACTS TO STATE A CLAIM OF INDUCED OR CONTRIBUTORY INFRINGEMENT ...................................................... 12

    A.    Standards for Induced and Contributory Infringement .......................... 12

         1.    Induced Infringement ............................................................. 13

         2.    Contributory Infringement ...................................................... 14

    B.    The Complaint Fails to State a Claim for Induced or Contributory Infringement Of The '846 Patent ....................................................... 15

         1.    The Complaint Admits That The Accused Wet Brake Itself Does Not Infringe The '846 Patent ........................................ 16

Page(s)

2.      No Sufficient Facts Are Alleged To Support The Intent Or The No Substantial Non-Infringing Uses Elements.................................................18

CONCLUSION......................................................................................................................20

56282227

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
    501 F.3d 1307 (Fed. Cir. 2007)..............................................................................13, 18

*Addiction & Detoxification Inst. LLC v. Carpenter*,
    620 Fed. Appx. 934 (Fed. Cir. 2015)...........................................................8, 12, 19, 20

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
    377 U.S. 476 (1964)...........................................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................7, 8, 11, 12, 19, 20

*Astornet Techs. Inc. v. BAE Sys., Inc.*,
    802 F.3d 1271 (Fed. Cir. 2015)........................................................................................14

*Atuahene v. City of Hartford*,
    10 Fed. Appx. 33 (2d Cir 2001) .........................................................................................8

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
    No. C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012)...................................14

*Banks v. Corr. Servs. Corp.*,
    475 F. Supp. 2d 189 (E.D.N.Y. 2007) ..............................................................................9

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001)............................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................7, 8

*Commil USA, LLC v. Cisco Sys., Inc.*,
    720 F.3d 1361 (Fed. Cir. 2013),
    *vacated in part on other grounds*, 575 U.S. 632 (2015)...............................................13

*DeWitt v. Hutchins*,
    309 F. Supp. 2d 743 (M.D.N.C. 2004) ..........................................................................9

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 12936 (Fed. Cir. 2006)....................................................................................13

-iii-

Page(s)

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011)..................................................................................................13, 15

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012).....................................................................................15, 20

*Koninklijke Philips Elecs. N.V. v. ADS Grp.*,
    694 F. Supp. 2d 246 (S.D.N.Y. 2010).................................................................................11

*Kyocera Wireless Corp. v. ITC*,
    545 F.3d 1340 (Fed. Cir. 2008).........................................................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009).........................................................................................14

*Murray v. Miner*,
    74 F3d 402 (2d Cir. 1996).................................................................................................12

*New York v. Mountain Tobacco Co.*,
    55 F. Supp. 3d 301 (E.D.N.Y. 2014) ...................................................................................9

*Optigen, LLC v. Int'l Genetics, Inc.*,
    877 F. Supp. 2d 33 (N.D.N.Y. 2012)...............................................................................9, 11

*Parallel Networks Licensing, LLC v. Microsoft Corp.*,
    777 Fed. Appx. 489 (Fed. Cir. 2019)..................................................................12, 13, 17, 18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016).........................................................................................14

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l*,
    957 F. Supp. 2d 1189 (S.D. Cal. 2013).............................................................................13, 19

*Superior Indus., LLC v. Thor Global Enters. Ltd.*,
    700 F.3d 1287 (Fed. Cir. 2012).......................................................................................15, 20

*Trisvan v. Heyman*,
    No.16-CV-84 (MKB), 2017 BL 95417, 2017 WL 1133344
    (E.D.N.Y. Mar. 24, 2017) ...............................................................................................9, 11

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)..................................................................................13, 15, 20

-iv-

Page(s)

*Williams v. Lovell Safety Mgmt. Co.*,
    71 A.D.3d 671 (N.Y. App. Div., 2d Dep't 2010) ............................................................9


**CODES, STATUTES, AND RULES**

35 U.S.C. § 271(b) ..............................................................................................................13

35 U.S.C. § 271(c) ........................................................................................................14, 15

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 7

## INTRODUCTION

Defendants Axle, Inc. ("Axle"), Imaginative MFG., Inc. ("Imaginative"), and Scott Austin ("Austin," and together with Axle and Imaginative, "Defendants"), through their counsel, Pepper Hamilton LLP, hereby submit this memorandum of law in support of their motion to dismiss the Complaint [Docket No. 1] (the "Complaint") filed by Plaintiff Ausco Products, Inc. ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

The Complaint fails to state a claim for which relief can be granted. As an initial matter, the Complaint fails to provide any factual allegations sufficient to show what alleged infringing conduct was purportedly engaged in by each of the named Defendants. Instead, the Complaint asserts, without substantiating factual allegations, conclusory allegations regarding "Defendants." As a result, the Complaint provides no notice regarding the accused conduct of each of the named Defendants. This is improper group pleading.

In addition, with regard to Defendant Austin, other that asserting that he is "Chief Executive Officer of Axle and Imaginative," (Complaint, ¶ 11), the Complaint does not contain a single factual allegation regarding any conduct Austin engaged in individually or any basis to hold him personally liable for acts of the other Defendants. Thus, no claim has been stated against Austin.

Likewise, with regard to Defendant Axle, other than pointing to Imaginative's website, the Complaint again lacks even a single factual allegation regarding any conduct by Axle that could support infringement claims against that Defendant.

---

[1] As set forth below, Plaintiff's conclusory allegations and legal assertions unsupported by sufficient factual matter are not entitled to be assumed true, even on a motion to dismiss. Defendants reserve the right to contest all of Plaintiff's allegations in the Complaint in the event dismissal is not granted.

Further, with regard to Defendant Imaginative, the only basis for the claims against that Defendant is content from website pages. Beyond that, the Complaint pleads no facts to support that the accused product was actually offered for sale or sold to any specified third party. In addition, with regard to the Complaint's cause of action for indirect infringement of U.S. Patent No. 9,249,846, it is axiomatic that to state a claim for indirect infringement, a complaint must allege facts sufficient to show that there is a direct infringer. Here, the Complaint contains no factual allegations whatsoever regarding the existence of any potential direct infringer, let alone facts sufficient to show that such a direct infringer met the elements of any claim.

Based on these fatal deficiencies, the Complaint should be dismissed.

## ALLEGATIONS IN THE COMPLAINT

Plaintiff initiated this action by filing the Complaint, which seeks "judgment that Defendants are infringing U.S. Patent No. 9,249,846 ("the '846 patent"), a true and accurate copy of which is attached as **EXHIBIT 1**, and U.S. Patent No. 9,835,211 ("the '211 patent"), a true and accurate copy of which is attached as **EXHIBIT 2**." Complaint, ¶1.

### A.    Allegations Regarding Each Defendant

With regard to the alleged infringing conduct of each Defendant, the Complaint's minimal allegations as to each Defendant are as follows (Complaint, ¶¶8-11):

8.    Upon information and belief, Axle is a manufacturer or importer and seller of brake assemblies, including the Wet Brake product of **EXHIBIT 3.**

9.    Upon information and belief, Imaginative is a manufacturer or importer and seller of brake assemblies, including the Wet Brake product of **EXHIBIT 3.**

10.    **EXHIBIT 3** consists of webpages downloaded from the website www.imaginativemfg.com on July 31, 2019. The assembly drawing of **EXHIBIT 3** is reproduced as **EXHIBITS 4-10** with additional labeling for correlating the "Wet Brake" product with the patent claims as presented hereinafter. Upon information and belief, Axle and/or Imaginative is/are the owners/operators of the website www.imaginativemfg.com.

-2-

11.     Austin is the Chief Executive Officer of Axle and Imaginative.

The remainder of the Complaint is dedicated to comparing patent claim elements of the asserted patents to alleged features of the product displayed on the Imaginative website pages included with the Complaint (the "accused Wet Brake").  The Complaint alleges no other facts whatsoever on actual infringing conduct by each Defendant, actual offers or sales of any infringing product to any actual third party, or the existence of any actual direct infringers to support the indirect infringement cause of action.

### B.      The Patents-In-Suit and Infringement Allegations

The Complaint alleges infringement of the '846 and '211 Patents, which are asserted to be owned by Plaintiff.  With regard to the '846 Patent, Plaintiff alleges that:

> Independent claims 1 and 10 [of the '846 Patent] are generally directed to a brake assembly adapted to be mounted to the flange of an axle housing.  (**EXHIBIT 1**)

Complaint, ¶13.

The Complaint then alleges indirect infringement by the accused Wet Brake, but only "when mounted to an axle housing flange" or "in combination with a wheel hub assembly on which it is used" or "when in use as intended."  However, no facts are alleged regarding any purported direct infringer who actually ever met those elements, which Plaintiff admits by its allegations is necessary for there to be infringement. Specifically, the Complaint alleges (emphasis added):

> 15.     As apparent from **EXHIBIT 4**, the Wet Brake product, _when mounted to an axle housing flange_ (**EXHIBIT 4, ITEM 3A**), contains each of the elements of claim 1 of the '846 patent.

> 16.     Claim 1 requires a brake comprising a stationary plate having a plurality of threaded holes.  The Wet Brake product has a stationary plate having a plurality of threaded holes.  (**EXHIBIT 4, ITEMS 5 and 5A**)

-3-

17.    Claim 1 requires that the brake having a longitudinally extending mounting sleeve positioned longitudinally adjacent the axle housing flange on a side opposite the stationary plate and immediately laterally adjacent to the axle housing.  The Wet Brake product, _when mounted to an axle housing flange_, has this element.  (**EXHIBIT 4, ITEM 2**)

18.    Claim 1 requires a plurality of holes through the mounting sleeve.  The Wet Brake product has this element.  (**EXHIBIT 4, ITEM 2A**)

19.    Claim 1 requires a plurality of bolts extending in a longitudinal direction, having a threaded portion and a head, and being received in the holes in the mounting sleeve, the holes through the axle housing flange, and the threaded holes in the stationary plate to secure the brake to the axle housing. As seen in **EXHIBIT 4**, the Wet Brake product, _when mounted to an axle housing flange_, has this element. (**EXHIBIT 4**, **ITEMS 1, 1B, 1C, 2A, 2, 3A, 3, 5A, 5 and 3**)

20.    Claim 1 requires that the heads of the bolts be spaced from the axle housing. The Wet Brake product, _when mounted to an axle housing flange_, has this element. (**EXHIBIT 4, ITEMS 1C, 3 and 3A**)

21.    Claim 1 requires that the mounting sleeve have an outer surface at least a portion of which is devoid of a component positioned laterally adjacent thereto, and form at least a part of the outermost surface of the brake assembly. The Wet Brake product has this element.  (**EXHIBIT 4, ITEMS 2 and 2C**)

22.    Claim 1 requires that the outer surface of the mounting sleeve be devoid of teeth. The outer surface of the Wet Brake product is devoid of teeth. (**EXHIBIT 4**, **ITEMS 2C or 2B**)

23.    Claim 10 requires a wheel hub assembly comprising an axle, a unitary axle housing having a flange, a brake assembly secured to the axle housing flange near the end of the axle, and a hub rotationally secured to the axle. The Wet Brake product, _in combination with a wheel hub assembly on which it is used_, has these elements. (**EXHIBIT 5**, **ITEMS 3, 3A, (7, 23 and 8) and 13**)

24.    Claim 10 requires that an end of the hub include a plurality of lug bolts adapted to receive a vehicle wheel. The Wet Brake product, _in combination with a wheel hub assembly on which it is used_, has this element. (**EXHIBIT 5**, **ITEMS 13 and 15**)

25.    Claim 10 requires that the brake assembly include a stationary plate having a plurality of threaded channels. The Wet Brake product has this element. (**EXHIBIT 5**, **ITEMS 5 and 5A**)

26.    Claim 10 requires a longitudinally extending mounting sleeve that is positioned immediately laterally adjacent to the unitary axle housing flange on the

-4-

side opposite the stationary plate and immediately adjacent to the unitary axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEMS 2, 3A and 5**)

27.     Claim 10 requires that the mounting sleeve have a plurality of holes. The Wet Brake product has this element. (**EXHIBIT 5**, **ITEMS 2 and 2A**)

28.     Claim 10 requires a plurality of bolts extending in a longitudinal direction and having a threaded portion and a head, the bolts being received in the holes in the mounting sleeve, the holes through the axle housing flange, and the threaded channels, to secure the brake to the axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEMS 1, 1B, 1C, 2A, 3A and 5A**)

29.     Claim 10 requires that the mounting sleeve include at least two separate arcuate pieces that together form a generally annular mounting sleeve, wherein the heads of the bolts are spaced from the axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEM 2 shown in two pieces, and ITEM 1C**).

30.     Claim 10 requires that the bolts have a longitudinal length, and the mounting sleeve has a longitudinal length, with the longitudinal length of the mounting sleeve being approximately half of the longitudinal length of the bolts. The Wet Brake product has this element. (**EXHIBIT 5**, **ITEMS 1 and 2**)

31.     For the reasons set forth directly above, and as seen in **EXHIBITS 4** and **5**, the Wet Brake product, *when in use as intended*, infringes at least claims 1 and 10 of the '846 patent.

32.     Each of the additional features and limitations of at least dependent claim numbers 2-9 and 11-17 are also found in the Wet Brake product, *when in use as intended*.

33.     Defendants make, offer for sale and sell the Wet Brake products expressly *for installation on axle housing flanges and/or in combination with wheel hub assemblies*, which installations directly infringe the claims of the '846 patent under 35 U.S.C. § 271 (a) as stated above.

34.     Defendants actively induce the direct infringement of the '846 patent under 35 U.S.C. § 271 (b) by offering for sale and selling the Wet Brake products expressly *for installation on axle housing flanges and/or in combination with wheel hub* assemblies.

35.     Defendants are contributory infringers of the '846 patent under 35 U.S.C. § 271 (c) by offering for sale and selling the Wet Brake products which are a

-5-

material part of the invention claimed in the '846 patent and not as a staple article of commerce suitable for substantial non-infringing use.

36.     Defendants manufacture, import, offer to sell and sell the Wet Brake product in the United States and are thereby inducing infringement or contributing to the infringement, literally and/or under the doctrine of equivalents, of one or more claims of Ausco's '846 patent, including at least independent claim numbers 1 and 10.

37.     Since at least late 2017, through correspondence directed to Austin, Defendants have been aware of the '846 patent and have knowledge of the acts of infringement that are occurring by their offer for sale and sales of the Wet Brake product.

Complaint, ¶¶15-37.

With regard to the direct infringement claim regarding the '211 Patent, the Complaint alleges that:

Independent claims 1, 7, 8, 11 and 16 [of the '211 Patent] are generally directed to a brake assembly adapted to be mounted to the flange of an axle housing. (**EXHIBIT 2**)

Complaint, ¶41.  The Complaint then follows a similar pattern of group pleading regarding Defendants' alleged conduct, recitation of claim elements, and then a comparison of those claim elements to content from Imaginative's Website.  The specific allegations with regard to the claim limitations of the '211 Patent as compared to the accused Wet Brake and the alleged infringement follow the same formulaic recitation as the allegations quoted above for the '846 Patent, although only direct infringement is alleged as to the '211 Patent.  *See* Complaint, ¶¶42-71.

The Complaint is devoid of any specific factual allegations regarding: (1) any actual offers or sales of the accused Wet Brake to any actual third party; (2) any use or mounting of the accused Wet Brake by any Defendant or any third party; (3) any testing of the accused Wet Brake by any Defendant or any third party; (4) any allegations, beyond conclusory recitations of

-6-

claim elements, that Defendants were aware of the patents or were aware of any acts of

infringement; or (5) any facts to support that the accused Wet Brake is a non-staple product

without substantial non-infringing uses.

**ARGUMENT**

## I.    STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.  Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'"

*Id.* (internal citations omitted).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements" are not entitled to be accepted as true on a

motion to dismiss.  *Id.*  "[A] court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to

the assumption of truth.  While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations."  *Id.* at 679.  "[B]are assertions

. . . [that] amount to nothing more than a 'formulaic recitation of the elements' of a . . .

claim . . . are conclusory and not entitled to be assumed true."  *Id.* at 681 (citation

omitted).

Additionally, a complaint will not suffice if it "tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"  *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

557 (2007)).  Such a complaint "has alleged - but it has not 'show[n]' - 'that the pleader is

entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted). "*Twombly* and *Iqbal* require that a complaint for patent infringement contain sufficient factual allegations such that a reasonable court could, assuming the allegations were true, conclude that the defendant infringed." *Addiction & Detoxification Inst. LLC v. Carpenter*, 620 Fed. Appx. 934, 936 (Fed. Cir. 2015).

## II.    THE COMPLAINT IS BASED ON IMPERMISSABLE GROUP PLEADING

The Complaint only contains the following threadbare and conclusory allegations regarding the accused conduct of each specific Defendant (Complaint, ¶¶ 8-11):

> 8.    Upon information and belief, Axle is a manufacturer or importer and seller of brake assemblies, including the "Wet Brake" product of **EXHIBIT 3.**

> 9.    Upon information and belief, Imaginative is a manufacturer or importer and seller of brake assemblies, including the Wet Brake product of **EXHIBIT 3.**

> 10.    **EXHIBIT 3** consists of webpages downloaded from the website www.imaginativemfg.com on July 31, 2019. The assembly drawing of **EXHIBIT 3** is reproduced as **EXHIBITS 4-10** with additional labeling for correlating the "Wet Brake" product with the patent claims as presented hereinafter. Upon information and belief, Axle and/or Imaginative is/are the owners/operators of the website www.imaginativemfg.com.

> 11.    Austin is the Chief Executive Officer of Axle and Imaginative.

Beyond this, the allegations in the Complaint are based entirely on an image from Imaginative's website and assertions regarding conduct by "Defendants" that are devoid of supporting factual substantiation. For example, no other facts are asserted regarding conduct by each individual Defendant and there are no allegations sufficient to give notice to any Defendant regarding its specific conduct that supposedly supports patent infringement claims. This is impermissible group pleading that fails to state a claim for relief. *See Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (affirming the dismissal of the complaint because "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [FRCP Rule 8's] minimum standard . .

. .”); *New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014) (“the Court pauses to note that the amended complaint does not allege a single fact connecting [the defendant] to the [alleged wrongful conduct], but rather asserts only conclusions about ‘defendants.’ ‘This type of group pleading is inadequate to state a claim.’” (citation omitted)). Therefore, the Complaint should be dismissed in its entirety.

## III.    THE COMPLAINT FAILS TO PLEAD FACTS TO STATE A CLAIM AGAINST AUSTIN AND AXLE

### A.    Standard for Individual Liability

“In New York, corporate officers and shareholders are not liable for corporate debts . . . unless the corporate veil is pierced.” *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 197 (E.D.N.Y. 2007).  Moreover, “a corporate executive or officer may be held individually liable for torts that were allegedly committed by the executive’s company only if the executive participated in or directly oversaw the allegedly tortious conduct.” *Trisvan v. Heyman*, No.16-CV-84 (MKB), 2017 BL 95417, 2017 WL 1133344, at \*4 (E.D.N.Y. Mar. 24, 2017) (citing *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) (dismissing claims against individual defendants because the complaint merely identified the individual defendants as corporate officers but failed to detail any activity engaged in by the individual defendants). “‘Generally, a plaintiff seeking to pierce the corporate veil must show that complete domination was exercised over a corporation with respect to the transaction attacked, and that such domination was used to commit a fraud or wrong against the plaintiff [that] resulted in plaintiff’s injury.’” *Optigen, LLC v. Int’l Genetics, Inc.*, 877 F. Supp. 2d 33, 47 (N.D.N.Y. 2012) (internal quotations omitted) (quoting *Williams v. Lovell Safety Mgmt. Co.*, 71 A.D.3d 671, 671 (N.Y. App. Div., 2d Dep’t 2010)); *see also DeWitt v. Hutchins*, 309 F. Supp. 2d 743 (M.D.N.C. 2004) (dismissing complaint against individual defendant where there were no facts pleaded to support

individual, as opposed to corporate liability).  Here, the Complaint alleges no facts whatsoever

that Austin engaged in any conduct outside the scope of his authority or otherwise engaged in

infringement.  Likewise, the Complaint is devoid of any factual allegations to support piercing

the corporate veil.

**B.    The Complaint Fails to Plead Any Facts to Support Individual
        Liability of Austin**

The Complaint fails to state a claim against Austin because it does not allege any facts to

support piercing the corporate veil or to suggest that Austin can be liable individually for patent

infringement.  As a result, the Complaint must be dismissed as against Austin.

The Complaint alleges that Austin is the CEO of Axle and Imaginative.  *See* Complaint,

¶11.  The Complaint alleges that "Axle and/or Imaginative is/are the owners/operators of the

website www.imaginativemfg.com."  Complaint, ¶10.  The Complaint alleges that Plaintiff

"directed" correspondence to Austin to allegedly make Defendants "aware of the '846 patent and

[give] knowledge of the acts of infringement that are occurring by their offer for sale and sales of

the Wet Brake product."  Complaint, ¶37.  Beyond these allegations, the Complaint contains no

factual allegations regarding Austin.  The Complaint likewise contains no factual allegations

whatsoever to suggest that Austin dominated Axle or Imaginative and no allegations to suggest

that Austin abused the corporate form or engaged in any fraud.  *See generally* Complaint.

The Complaint further contains no non-conclusory allegations that Austin offered for sale

or sold the accused Wet Brake in his individual capacity.  The only factual allegation to support

infringement is the allegation that the accused Wet Brake appears on Imaginative's website.  *See*

Complaint, ¶10 and EXHIBIT 3.  Aside from identifying Austin by his title, the Complaint

thereafter merely lumps Austin together with "Defendants" in the Complaint's infringement

-10-

allegations.  *See* Complaint, ¶¶33-38, 70-72.  Thus, the Complaint contains no factual allegations that Austin committed any acts of patent infringement for which he could be individually liable.

Since the Complaint fails to allege any facts beyond naked conclusions and recitations of patent claim elements, no claim has been stated sufficient to support any cause of action against Austin individually.  Thus, the Complaint should be dismissed as against Austin.  *See Iqbal*, 556 U.S. at 679; *Optigen, LLC*, 877 F. Supp. 2d at 47; *Trisvan*, No.16-CV-84 (MKB), 2017 BL 95417, 2017 WL 1133344, at *4; *Koninklijke Philips Elecs. N.V. v. ADS Grp.*, 694 F. Supp. 2d 246, 252-53 (S.D.N.Y. 2010) (dismissing claims against individual corporate officers).

### C.    The Complaint Fails to State a Claim Against Axle

Similar to the lack of factual allegations to support any claim against Austin, the Complaint likewise lacks sufficient factual allegations to support a claim against Axle.  The Complaint alleges, in conclusory fashion, that "Axle is a manufacturer or importer and seller of brake assemblies, including the 'Wet Brake' product of **EXHIBIT 3**" and that "Axle and/or Imaginative is/are the owners/operators of the website www.imaginativemfg.com."  Complaint, ¶¶8, 10.  However, no facts are alleged to support either of these conclusions.  The entire basis for Plaintiff's infringement allegations is the image of the accused Wet Brake, which Plaintiff admits was found on Imaginative's website page.  Not a single fact is alleged to substantiate that Axle ever made, had made, imported, exported, used, offered for sale, or sold that accused product.  The Complaint contains not a single factual allegation concerning any of the above regarding Axle.

The only conceivable factual connection alleged between Axle and the infringement claims in the Complaint is the fact that Axle's contact information is listed on the www.imaginativemfg.com website pages included in Exhibit 3.  However, no facts are alleged that could conceivably support the conclusion that because there was some information relating

-11-

to Axle on that webpage, that Axle is an infringer. Indeed, Plaintiff itself admits that its

infringement claims are based on Imaginative website content. *See* Complaint, ¶10.

Absent extraordinary facts, one corporation cannot be liable for the conduct of another

corporation, because each is a distinct legal entity. *See Murray v. Miner*, 74 F3d 402, 404 (2d

Cir. 1996) ("Under the doctrine of limited liability, a corporate entity is liable for the acts of a

separate, related entity only under extraordinary circumstances, commonly referred to as piercing

the corporate veil."). To hold Axle liable for content on Imaginative's website page, the

Complaint must contain factual allegations on specific infringing conduct by Axle or abuse of

the corporate form. *See Murray*, 74 F.3d at 404. There are no such allegations in the Complaint.

Thus, Plaintiff's assertion that Axle engaged in infringement based on a mention of Axle

on the accused website is nothing more than a fact-free conclusion that should not be accepted as

true. *See Iqbal*, 556 U.S. at 679. There is no non-conclusory allegation to suggest that Axle

itself has engaged in infringement. Plaintiff's claims for patent infringement as against Axle fail.

As a result, the Complaint should be dismissed as against Axle. *See Iqbal*, 556 U.S. at 679;

*Addiction & Detoxification Inst. LLC*, 620 Fed. Appx. at 936.

## IV.    THE COMPLAINT FAILS TO PLEAD FACTS TO STATE A CLAIM OF INDUCED OR CONTRIBUTORY INFRINGEMENT

### A.    Standards for Induced and Contributory Infringement

"Simply repeating the legal conclusion that Defendants induced infringement or

contributorily infringed does not plead 'factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" *Addiction &*

*Detoxification Inst. LLC*, 620 Fed. Appx. at 938 (quoting *Iqbal*, 556 U.S. at 678). "To establish

indirect infringement, a patentee must show that the defendant's actions led to direct

infringement." *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 Fed. Appx. 489, 493

-12-

(Fed. Cir. 2019). "'In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit.'" *Id.* (quoting *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)).

### 1.    Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim for induced infringement, a plaintiff is required to plead facts showing "both knowledge of the existence of the patent and 'knowledge that the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013), *vacated in part on other grounds*, 575 U.S. 632 (2015) (citing *Global–Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (explaining that an "'alleged infringer must be shown ... to have *knowingly* induced infringement," not merely knowingly induced the *acts* that constitute direct infringement." (internal quotation marks and citation omitted)).

A plaintiff is required to plead facts showing that an alleged inducer "knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). "[T]he specific intent necessary to induce infringement 'requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement.'" *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1353-54 (Fed. Cir. 2008) (citation omitted); *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l*, 957 F. Supp. 2d 1189, 1199 (S.D. Cal. 2013) (dismissing inducement claims where Plaintiff failed to provide "facts plausibly showing that Defendants specifically intended third party

infringement" (emphasis omitted)); *see also Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No.

C 11-04049 JW, 2012 WL 2343163, at *5 (N.D. Cal. June 5, 2012) (finding the complaint failed

to sufficiently allege the knowledge requirement of the indirect infringement claim and holding

that "the allegations, taken as true, merely indicate that Defendant Garmin provided other parties

with 'instruction' and 'training' in the use of Defendant Garmin's own products."). "'To prove

inducement of infringement, the patentee must []show that the accused inducer took an

affirmative act to encourage infringement with the knowledge that the acts constitute patent

infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315,

1332 (Fed. Cir. 2016) (quoting *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed.

Cir. 2015).

### 2. Contributory Infringement

"Whoever offers to sell or sells within the United States or imports into the United States

a component of a patented machine, manufacture, combination or composition, or a material or

apparatus for use in practicing a patented process, constituting a material part of the invention,

knowing the same to be especially made or especially adapted for use in an infringement of such

patent, and not a staple article or commodity of commerce suitable for substantial noninfringing

use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). Accordingly, to properly

plead contributory infringement, a plaintiff must plead facts showing that "in addition to proving

an act of direct infringement,…defendant knew that the combination for which its components

were especially made was both patented and infringing and that defendant's components have no

substantial non-infringing uses." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320

(Fed. Cir. 2009) (internal quotation marks and citation omitted).

-14-

A claim of contributory infringement requires that the plaintiff show that the defendant has made and sold a product for use in practicing a patent, "knowing it to be 'especially made or especially adapted for use in an infringement of such patent, and *not* a staple article or commodity of commerce *suitable for substantial non-infringing use*.'"  *Vita-Mix*, 581 F.3d at 1327 (quoting 35 U.S.C. § 271(c)).  "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012); *see also Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012) (dismissing claim for contributory infringement for failure to plead requirements under 271(c)).  Like induced infringement, contributory infringement requires knowledge of the patents and knowledge of the alleged direct infringement.  *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) ("§ 271(c) does require a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."); *see also Global-Tech*, 131 S. Ct. at 2068 (noting that the same knowledge is needed for induced infringement and contributory infringement).

**B.    The Complaint Fails to State a Claim for Induced or Contributory Infringement Of The '846 Patent**

Here, the Complaint fails to state a claim for either induced or contributory infringement because the Complaint fails to plead sufficient facts to establish that: (i) any acts of direct infringement have occurred or that the accused product necessarily would infringe the '846 Patent; or (ii) any Defendant had the intent sufficient to indirectly infringe the '846 Patent and/or that the accused Wet Brake, even assuming it infringes, has no substantial non-infringing uses.

-15-

### 1.    The Complaint Admits That The Accused Wet Brake Itself Does Not Infringe The '846 Patent

The Complaint does not allege that the accused Wet Brake itself infringes any claim in the '846 Patent. *See* Complaint, ¶¶15-31. Instead, the Complaint admits that key claim elements are only met if that product is used in a certain way involving mounting "to an axle housing flange" or "in combination with a wheel hub assembly on which it is used." For example (emphasis added):

15.     As apparent from **EXHIBIT 4**, the Wet Brake product, *when mounted to an axle housing flange* (**EXHIBIT 4, ITEM 3A**), contains each of the elements of claim 1 of the '846 patent.

17.     Claim 1 requires that the brake having a longitudinally extending mounting sleeve positioned longitudinally adjacent the axle housing flange on a side opposite the stationary plate and immediately laterally adjacent to the axle housing. The Wet Brake product, *when mounted to an axle housing flange*, has this element. (**EXHIBIT 4, ITEM 2**)

19.     Claim 1 requires a plurality of bolts extending in a longitudinal direction, having a threaded portion and a head, and being received in the holes in the mounting sleeve, the holes through the axle housing flange, and the threaded holes in the stationary plate to secure the brake to the axle housing. As seen in **EXHIBIT 4**, the Wet Brake product, *when mounted to an axle housing flange*, has this element. (**EXHIBIT 4**, **ITEMS 1, 1B, 1C, 2A, 2, 3A, 3, 5A, 5 and 3**)

20.     Claim 1 requires that the heads of the bolts be spaced from the axle housing. The Wet Brake product, *when mounted to an axle housing flange*, has this element. (**EXHIBIT 4**, **ITEMS 1C, 3 and 3A**)

23.     Claim 10 requires a wheel hub assembly comprising an axle, a unitary axle housing having a flange, a brake assembly secured to the axle housing flange near the end of the axle, and a hub rotationally secured to the axle. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has these elements. (**EXHIBIT 5**, **ITEMS 3, 3A, (7, 23 and 8) and 13**)

24.     Claim 10 requires that an end of the hub include a plurality of lug bolts adapted to receive a vehicle wheel. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEMS 13 and 15**)

26.     Claim 10 requires a longitudinally extending mounting sleeve that is positioned immediately laterally adjacent to the unitary axle housing flange on the

-16-

side opposite the stationary plate and immediately adjacent to the unitary axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEMS 2, 3A and 5**)

28.      Claim 10 requires a plurality of bolts extending in a longitudinal direction and having a threaded portion and a head, the bolts being received in the holes in the mounting sleeve, the holes through the axle housing flange, and the threaded channels, to secure the brake to the axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEMS 1, 1B, 1C, 2A, 3A and 5A**)

29.      Claim 10 requires that the mounting sleeve include at least two separate arcuate pieces that together form a generally annular mounting sleeve, wherein the heads of the bolts are spaced from the axle housing. The Wet Brake product, *in combination with a wheel hub assembly on which it is used*, has this element. (**EXHIBIT 5**, **ITEM 2 shown in two pieces, and ITEM 1C**).

Complaint, ¶¶15-37.

To state a claim for indirect infringement, a Plaintiff must allege facts sufficient to show that a direct infringement has occurred. *Parallel Networks Licensing, LLC*, 777 Fed. Appx. at 493 ("To establish indirect infringement, a patentee must show that the defendant's actions led to direct infringement."). However, the Complaint fails to allege even a single fact to support that the accused Wet Brake has ever been used in a manner to meets those claim elements. Indeed, the allegations in the Complaint are expressly hypothetical in nature. Plaintiff carefully avoids alleging even a single fact that the accused Wet Brake has ever been actually used by any actual person in a manner that infringes.

The Complaint also fails to allege any facts that the accused Wet Brake if used would necessarily infringe. This is likely because Plaintiff knows it can make no such allegation. For example, Plaintiff's infringement allegations note "mounting sleeves" as a component of the accused Wet Brake that is a required element for all its infringement claims (direct and indirect). *See* Complaint, ¶¶17-19, 21-22, 26-30. Plaintiff does not allege that those "sleeves" must be used, because it knows such an assertion would be false. "'In order to prove direct infringement,

-17-

a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit.'" *Parallel Networks Licensing, LLC*, 777 Fed. Appx. at 493 (quoting *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Plaintiff has not met this requirement.

Beyond abstract and hypothetical theorizing, the Complaint alleges no facts to support that any direct infringement has occurred or would necessarily occur. Thus, Plaintiff's indirect infringement claim fails because the Complaint does not plead facts to show that any direct infringement has occurred or necessarily would occur. *See Parallel Networks Licensing, LLC*, 777 Fed. Appx. at 493.

### 2.  No Sufficient Facts Are Alleged To Support The Intent Or The No Substantial Non-Infringing Uses Elements

The Complaint likewise fails to plead any non-conclusory facts that Defendants had the specific intent to infringe the '846 Patent and/or that the accused Wet Brake lacked substantial non-infringing uses.

The Complaint's supporting allegations directed toward intent and the other elements of induced and contributory infringement are contained in paragraphs 34 to 37 (emphasis added):

> 34.    Defendants actively induce the direct infringement of the '846 patent under 35 U.S.C. § 271 (b) by offering for sale and selling the Wet Brake products expressly *for installation on axle housing flanges and/or in combination with wheel hub* assemblies.

> 35.    Defendants are contributory infringers of the '846 patent under 35 U.S.C. § 271 (c) by offering for sale and selling the Wet Brake products which are a material part of the invention claimed in the '846 patent and not as a staple article of commerce suitable for substantial non-infringing use.

> 36.    Defendants manufacture, import, offer to sell and sell the Wet Brake product in the United States and are thereby inducing infringement or contributing to the infringement, literally and/or under the doctrine of equivalents, of one or more claims of Ausco's '846 patent, including at least independent claim numbers 1 and 10.

-18-

37.    Since at least late 2017, through correspondence directed to Austin, Defendants have been aware of the '846 patent and have knowledge of the acts of infringement that are occurring by their offer for sale and sales of the Wet Brake product.

These paragraphs merely restate the elements of induced and contributory infringement and fail to plead any facts to substantiate plausible claims.  The Federal Circuit and the Supreme Court have held that this sort of formulaic recitation of elements is insufficient to state a plausible claim for relief.  *See Addiction & Detoxification Inst. LLC*, 620 Fed. Appx. at 938 (affirming dismissal of the complaint and denial of a motion to amend where "[t]he First Amended Complaint did not include facts that would allow a court to reasonably infer that Defendants had the specific intent to induce infringement and dropped any allegation that Defendants contributorily infringed the patents."); *Seoul Laser Dieboard Sys. Co.*, 957 F. Supp. 2d at 1198 ("What Plaintiff fails to provide are facts plausibly showing that Defendants *specifically intended* third party infringement. . . . The Court cannot plausibly infer from the allegation that Defendants sold or used "certain machine tools" that Defendants specifically intended third party infringement.  Accordingly, the inducement claims are dismissed.").  As a result, Plaintiff's claims for indirect infringement of the '846 Patent should be dismissed.  *See Iqbal*, 556 U.S. at 678; *Addiction & Detoxification Inst. LLC*, 620 Fed. Appx. at 938.

On intent, the only factual allegation to support the element intent to infringe for induced infringement is that "[s]ince at least late 2017" Defendants have known of the '846 Patent.  *See* Complaint, ¶37.  However, the Complaint does not allege even a single fact to support that there has been any infringement of that patent (direct or indirect), in 2017 or thereafter.  This is because, as noted above, the Complaint's infringement allegations are hypothetical in nature; Plaintiff fails to factually allege even one instance of actual infringement, let alone that such an infringement occurred after Defendants purportedly had notice of the '846

-19-

Patent. This type of fact-free intent allegation cannot state a claim. *See Iqbal*, 556 U.S. at 678; *Addiction & Detoxification Inst. LLC*, 620 Fed. Appx. at 938. Further, the Complaint pleads no facts that Defendants ever gave any instructions or other guidance to anyone to induce any infringement.

Similarly, on contributory infringement, the Complaint is devoid of any factual allegations to support the assertion that the accused Wet Brake, even assuming it infringes the '846 Patent, is "not a staple article or commodity of commerce suitable for substantial non-infringing use." *Vita-Mix*, 581 F.3d at 1327. The Complaint's sole allegations directed toward contributory infringement are contained in paragraphs 35 and 36. These allegations are merely recitations of elements of the cause of action without any factual support. As a result, they are not entitled to be presumed true on a motion to dismiss and dismissal is warranted. *See also Iqbal*, 556 U.S. at 678; *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d at 1338-39 (affirming dismissal of the complaint where the complaint lacked factual allegations regarding a lack of substantial non-infringing uses); *Superior Indus., LLC*, 700 F.3d at 1296 (affirming dismissal of indirect infringement claims where the complaint failed to allege elements required for contributory infringement).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Date:  February 14, 2020

/s/ Andrew P. Zappia
Andrew P. Zappia, Esq.
Christina L. Shifton, Esq.
**PEPPER HAMILTON LLP**
70 Linden Oaks, Suite 210
Rochester, New York  14625
Tel:  (585) 270-2100
Fax:  (585) 270-2179
E-mail: zappiaa@pepperlaw.com
        shiftonc@pepperlaw.com

-20-

56282227

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of February 2020, the within Memorandum of Law in Support of Defendants' Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ray L. Weber          rlweber@rennerkenner.com
Laura J. Gentilcore   ljgentilcore@rennerkenner.com


*/s/ Andrew P. Zappia*
Andrew P. Zappia, Esq.